OPINION
{¶ 1} On July 9, 1998, appellant, Doris Nickler, went to appellee, Carrollton StatCare, aka StatCare of Carroll County, complaining of pain and a lump in her left thigh.[1] Appellant saw Rebecca Eiwen, M.D. who opined the problem was a muscle strain.
 {¶ 2} On September 24, 1998, appellant returned to appellee StatCare, again complaining of pain and a lump in her left thigh. Appellant saw Ann Shelby, D.O. who opined the problem could be a blood clot. Dr. Shelby sent appellant to appellee Mercy for further testing. At appellee Mercy, appellant saw appellee Rudy Zarate, M.D. Appellee Zarate found a soft tissue deformity in appellant's left thigh and sent her for testing to rule out a blood clot. Once a blood clot was ruled out, appellant saw appellee Linda Caldwell, M.D. Appellee Caldwell opined the problem was a left thigh strain.
 {¶ 3} On November 23, 1998, appellant once again returned to appellee StatCare for her left thigh. Appellant saw appellee Marie Pitchen, M.D. Appellee Pitchen opined the problem was a muscle spasm.
 {¶ 4} On March 28, 1999, appellant returned to appellee StatCare complaining of the same problem. Appellant saw Alfred Granson, M.D. Dr. Granson noted appellant's left thigh was one and one-half times the size of her right thigh and referred her to Omni Orthopedics for a CT scan.
 {¶ 5} On April 8, 1999, appellant underwent a biopsy and a cancerous tumor was discovered in her left thigh. After receiving chemotherapy and radiation, appellant underwent a left hip disarticulation on July 26, 1999.
 {¶ 6} On August 2, 2000, appellant, together with her husband, Russell Nickler, filed a medical malpractice complaint against appellees, including Columbia Mercy Medical Center and others not a part of this appeal.
 {¶ 7} On February 15, 2002, Dr. Shelby filed a motion for summary judgment. On same date, the remaining appellees filed a joinder motion in said motion for summary judgment and a motion for partial summary judgment. By judgment entry filed April 4, 2002, the trial court granted Dr. Shelby's motion. By judgment entry filed April 11, 2002, the trial court granted in part appellees' partial motion for summary judgment, finding appellees were entitled to summary judgment regarding their liability on "the failure to formulate, adopt or enforce hospital rules and policies on forwarding of medical records" and "negligent hiring, credentialing or retention of physicians or its failure to oversee a physician's care." These decisions were affirmed on appeal. Nickler v.Mercy Medical Center (January 13, 2003), Stark App. No. 2002CA00130.
 {¶ 8} A jury trial on the remaining issues commenced on April 15, 2002. The jury found in favor of appellees.
 {¶ 9} Appellants filed an appeal and their assignments of error are as follows:
 I {¶ 10} "The trial court erred by instructing the jury regarding `clinical judgment' and `error'."
 II {¶ 11} "The trial court erred in prohibiting appellants from offering testimony regarding appellee Mercy's negligent failure to follow their own procedures and to provide adequately trained and supervised physicians at Carrollton StatCare."
 III {¶ 12} "The trial court erred in prohibiting appellants from cross examining Dr. Galen regarding inconsistent opinions and retractions in her deposition testimony during trial."
 IV {¶ 13} "The trial court erred in failing to admit as evidence Dr. Weiner's diagram and the tumor models."
 {¶ 14} Appellees filed a cross-appeal and their assignments of error are conditional upon a reversal. This matter is now before this court for consideration.
 I {¶ 15} Appellants claim the trial court erred in giving a jury instruction that was a departure from Bruni v. Tatsumi (1976),46 Ohio St.2d 127, on medical negligence. We disagree.
 {¶ 16} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Martens (1993), 90 Ohio App.3d 338. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Jury instructions must be reviewed as a whole. State v. Coleman (1988),37 Ohio St.3d 286.
 {¶ 17} Appellants complain of the following jury instruction by the trial court (Vol. 12 T. at 391):
 {¶ 18} "A physician is not liable for a decision based on the exercise of his or her clinical judgment even where that judgment is proven with the passage of time to have been in error unless the physician was negligent.
 {¶ 19} "If you find from the evidence that one or more of the Defendants exercised the appropriate degree of skill during his or her treatment, care and diagnosis of the Plaintiff, then you must find for the Defendant or Defendants even if you believe it was made in error by the Defendant or Defendants."
 {¶ 20} Jury instructions must be reviewed in total to determine how each part relates to one another. The trial court went to great length to define negligence. The instructions on negligence cover four to five pages of the transcript. Id. at 388-392. In fact, the standard Bruni instruction was given prior to the complained of instruction. Id. at 389.
 {¶ 21} Appellants argue, as they did at trial, the complained of instruction is not an accurate statement of the law and is confusing. Id. at 260-261. Appellants argue the instruction indicates that negligence is something different than error in clinical judgment. They argue "clinical judgment" is the same as "standard of care" and "an error in your clinical judgment" is a "breach of the standard of care and therefore negligence." Appellant's Brief at 6. The complained of instruction changed the burden of proof from an objective standard to a subjective one. Id.
 {¶ 22} As case law emphasizes, the troublesome word is not "clinical" because clinical means the observations by the doctor of the patient.[2] The troublesome word is "judgment." Two different Courts of Appeals have reviewed "judgment" as a subjective standard and have found it to be error because the issue à la Bruni is an objective standard. Chupka v. Rigsby (1991), 75 Ohio App.3d 795; Yeager v.Riverside Methodist Hospital (1985), 24 Ohio App.3d 54.
 {¶ 23} "Yeager in particular states that what is wrong with the word `judgment' in an instruction is that it interposes subjectivity into standards which are supposed to be objective. Indeed, the dissenting judge in Yeager noted, `[b]ecause the word "judgment" connotes subjectivity, trial courts should entertain its use in charges of this nature with great reluctance and skepticism.' Yeager, supra, at 58, 24 OBR at 112, 493 N.E.2d at 564. In both cases, however, these courts found the instructions to be harmless and nonprejudicial because the totality of the charge, which must be examined fully to determine properly whether an error within the charge is prejudicial or harmless, did discuss the objective and appropriate standard of care." Kurzner v. Sanders (1993),89 Ohio App.3d 674, 679-680.
 {¶ 24} The question then remains whether the instruction sub judice interjected a subjective standard or so unduly prejudiced the outcome of the case. We answer in the negative for the following reasons.
 {¶ 25} Under Bruni, a physician is responsible for injuries if the physician violates the standard of care as is set by the physician's specialty. The jury charge emphasized this on two occasions. Vol. 12 T. at 388-389, 391. In particular, it was stated immediately following the complained of instruction. The complained of instruction speaks of retrospective application of the standard of care. In City of Cincinnativ. Public Utilities Commission of Ohio, 67 Ohio St.3d 523, 527-528,1993-Ohio-79, the Supreme Court of Ohio stated the following:
 {¶ 26} "We adopt the commission's definition of a prudent decision, which is in accord with that used in other jurisdictions, * * * as `one which reflects what a reasonable person would have done in light of conditions and circumstances which were known or reasonably should have been known at the time the decision was made.' In the Matter of theInvestigation into the Perry Nuclear Power Station (Jan. 12, 1988), PUCO No. 85-521-EL-COI, at 10-11. The standard contemplates a retrospective, factual inquiry, without the use of hindsight judgment, into the decision making process of the utility's management. See Re Syracuse Home Util.Co. (Dec. 30, 1986), PUCO No. 86-12-GA-GCR; Re Toledo Edison Co. (July 16, 1987), PUCO No. 86-05-EL-EFC." (Footnote omitted.)
 {¶ 27} On close examination of the complained of instruction, we find it is a restatement of Bruni and a general negligence standard of care. The instruction excuses a physician from responsibility for mistaken clinical judgment only if the physician is not negligent. Negligence is defined numerous times in the charge. Based upon our evaluation of the instruction as a whole, we fail to find undue prejudice or that although ill advised, the use of the word "judgment" was in error.
 {¶ 28} Assignment of Error I is denied.
 II {¶ 29} Appellants claim the trial court erred in prohibiting testimony on appellee Mercy's failure to follow its own procedures and failure to provide adequately trained and supervised physicians at appellee StatCare. We disagree.
 {¶ 30} Preliminarily, we note appellee Mercy was granted partial summary judgment via judgment entry filed April 11, 2002 wherein the trial court held the following:
 {¶ 31} "Defendants move for summary judgment as to any alleged negligence on the part of Defendants from an alleged failure to formulate, adopt, or enforce hospital rules and policies. Defendants argue that should Plaintiff claim negligence in connection with the faxing or mailing of Plaintiff's medical records, Defendants are entitled to summary judgment in their favor on such claim.
 {¶ 32} "Defendants also move for summary judgment as to any alleged claim for negligent hiring, negligent credentialing or retention or the hospital's failure to supervise a physician's care.
 {¶ 33} "As stated above, Ohio clearly provides that a hospital's duty is limited to a duty `only to grant and continue staff privileges at the hospital to competent physicians.' Albain, supra. In order to succeed in establishing the direct negligence of a hospital, a plaintiff must demonstrate that a hospital has failed to exercise reasonable care in selecting a physician and that, but for that lack of care, the physician would not have been granted staff privileges and the plaintiff would not have been injured. Id. Plaintiffs have not met that burden.
 {¶ 34} "Further, Ohio Revised Code Section 2305.25 includes the following presumption:
 {¶ 35} "(B)(1) A hospital shall be presumed to be not negligent in the credentialing of a qualified person if the hospital proves by a preponderance of the evidence that at the time of the alleged negligent credentialing of the qualified it was accredited by the joint commission on accreditation of health care organizations, the American osteopathic association, or the national committee for quality assurance.
 {¶ 36} "Defendants attach an affidavit of Barbara Horton evidencing that at all times relevant to Plaintiffs' complaint, the Joint Commission on Accreditation of Health Care Facilities accredited Defendant Hospital.
 {¶ 37} "Upon review of the motion, the briefs and the attached documents in support, this Court finds that no genuine issues of fact remain, and Defendants are entitled to judgment as a matter of law on the issue of their direct liability to Plaintiffs. Specifically, Defendants are entitled to summary judgment as to any alleged negligence with regard to the failure to formulate, adopt or enforce hospital rules and policies on forwarding medical records. Second, Defendants are entitled to summary judgment with regard to any alleged direct liability for negligent hiring, credentialing or retention of physicians or its failure to oversee a physician's care."
 {¶ 38} This matter was raised as an assignment of error in Nicklerv. Mercy Medical Center (January 13, 2003), Stark App. No. 2002CA00130, and this court found the following at 13-14:
 {¶ 39} "We find, with respect to appellees Mercy Medical Center, Columbia Mercy Medical Center, Carrollton StatCare, and StatCare of Carroll County, that the complaint, in the case sub judice, fails to meet the requirements of `notice pleading' under Civ.R. 8.
 {¶ 40} "* * *
 {¶ 41} "We find that the complaint did not provide appellees with even `fair notice' of the claims against them. Furthermore, in appellants' answers to interrogatories, appellants responded as follows when asked to state specifically and in detail in what manner appellees, among others, were negligent in their care and treatment of appellant: `Objection. Response calls for a legal conclusion and medical opinion. Without waiving the objection, Plaintiffs believe Defendants failed to timely diagnose her cancer.' (Footnote omitted.)
 {¶ 42} "In short, we concur with appellees that appellants' complaint `contained no claim or cause of action sounding in negligent hiring, selection, credentialing, or retention of physicians.' The trial court, therefore, did not err in granting the Motion for Summary Judgment filed by appellees Mercy Medical Center, Columbia Mercy Medical Center, Carrollton StatCare, and StatCare of Carroll County."
 {¶ 43} At trial, appellants argued their complaint should be read to include claims of negligence against appellee Mercy:
 {¶ 44} "* * * We said that it's an institution that holds itself out and an institution competent to provide medical care through its personnel and facilities.
 {¶ 45} "We go on to say that, As a direct and proximate result of the Defendants' negligent conduct, Plaintiff, Doris Nickler, suffered and continues to suffer personal injuries." Vol. 2 T. at 23-24.
 {¶ 46} The trial court disagreed with this expansive a reading of the complaint and limited the testimony as follows:
 {¶ 47} "Now, what I'm going to do is Hensley and Horton can testify. I've made it clear, I think in my ruling, that the only question as it relates to in giving a broad reading to your negligence claims as it relates to Doctor Pitchen that there may be testimony elicited with regard to that aspect, a physician; secondly, as to court — as to whether or not they were hired by and under the supervision and control of what entity, but beyond that any responsibility of nurses, responsibility of the corporate entity, uh, notwithstanding what you've just said it's, it's a physician and then the question will become whether or not Mercy Medical is responsible for any conduct on the part or lack thereof on the part of physician. I think that's what I ruled and that's what I will allow testimony on." Id. at 25-26.
 {¶ 48} Appellants specifically argue they should have been permitted to submit evidence on appellee Mercy's "failure to follow their own procedure regarding the forwarding of medical records at the patients request and for failing to provide properly trained and supervised physicians" at appellee StatCare. Appellants' Brief at 12-13.
 {¶ 49} The trial court had granted summary judgment on these issues via its April 11, 2002 judgment entry which was reviewed on appeal as cited supra. Given our opinion in Nickler, supra, we find no error in the trial court's decision to limit the evidence on these issues.
 {¶ 50} Assignment of Error II is denied.
 III {¶ 51} Appellants claim the trial court erred in restricting their cross-examination of Gayle Galan, M.D., an emergency room physician named as an expert by appellee Mercy. Specifically, appellants claim they should have been permitted to cross-examine Dr. Galan on her inconsistent opinions given in her deposition. We disagree.
 {¶ 52} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, supra.
 {¶ 53} Appellants point out that Dr. Galan retracted several of her opinions offered in the first part of her deposition. They claim these retractions speak directly to her overt bias and credibility.
 {¶ 54} At the commencement of the trial, the trial court noted all preliminary motions would be preserved for the record. Vol. 1 T. at 5. Later, the trial court specifically ruled on the issue of this assignment of error. Id. at 263. The trial court found the withdrawal of an opinion by Dr. Galan "was not the opinion for which she was being offered but was elicited * * * during discovery depositions on cross-examination." Id. Appellees argue this ruling as well as the earlier trial court statement did not preserve the issue for appeal. We disagree. We find no fault with the trial court's statement concerning preliminary motions in order to help the case flow before the jury. Further, there was no need for a proffer of Dr. Galan's testimony because her deposition was filed in the record on April 2, 2002.
 {¶ 55} Impeachment and cross-examination are controlled by the trial court and the Ohio Rules of Evidence:
 {¶ 56} "Evid R 607 Impeachment
 {¶ 57} "(A) Who may impeach
 {¶ 58} "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a), 801(D)(2), or 803.
 {¶ 59} "Evid R 611 Mode and Order of Interrogation and Presentation
 {¶ 60} "(A) Control by court
 {¶ 61} "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
 {¶ 62} "(B) Scope of cross-examination
 {¶ 63} "Cross-examination shall be permitted on all relevant matters and matters affecting credibility.
 {¶ 64} "Evid R 616 Methods of Impeachment
 {¶ 65} "In addition to other methods, a witness may be impeached by any of the following methods:
 {¶ 66} "(A) Bias
 {¶ 67} "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.
 {¶ 68} "* * *
 {¶ 69} "(C) Specific contradiction
 {¶ 70} "Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony. If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:
 {¶ 71} "(1) Permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706;
 {¶ 72} "(2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence."
 {¶ 73} During cross-examination on the first day of the discovery deposition, Dr. Galan opined the nature of the tumor as medium to high grade "traditionally involves chemotherapy and radiation and then goes on to hip disarticulation." Galan depo. at 148. Dr. Galan opined that even at the very earliest contact with appellees, July 1998, had the tumor been correctly diagnosed, appellant would have still required a hip disarticulation. Id. at 147-148, 151. When the deposition was reconvened over three months later, Dr. Galan retracted her opinion and claimed not to be a specialist in orthopedics, oncology, pathology or surgical intervention. Id. at 170-182.
 {¶ 74} During trial, Dr. Galan testified her expertise was in family medicine, family practice, emergency medicine and urgent care. Vol. 8 T. at 34-35. Dr. Galan was offered by appellees to establish whether or not there had been a breach from the standard care at appellee StatCare on July 9, 1998, September 24, 1998 and November 23, 1998 and at appellee Mercy on September 24, 1998 regarding the care and treatment given by appellees Zarate and Caldwell. Vol. 8 T. at 49-50, 54, 55-57, 66-67, 72-74, 75-81. Dr. Galan explained the ideology of appellant's complaint about her left thigh was different from July 1998 through November 23, 1998 than when appellant was diagnosed by Dr. Granson on March 28, 1999. Id. at 86-88.
 {¶ 75} Because Dr. Galan's expertise as well as her testimony were limited to emergency medicine and urgent care, she never would have met the Bruni test for testifying on the history of the tumor. If she had attempted such an opinion, it would have been a violation of Evid.R. 704.
 {¶ 76} Because Dr. Galan was offered for the limited purpose on the standard of care of emergency medicine or urgent care and would not have been qualified to give an opinion on the history of the tumor, we find no error in the trial court's decision. It must also be noted that the retracted opinion was given during the heat of cross-examination during a discovery deposition. This in particular sets it apart from an opinion given on direct or at trial.
 {¶ 77} Upon review, we find the trial court did not abuse its discretion in restricting the cross-examination of Dr. Galan.
 {¶ 78} Assignment of Error III is denied.
 IV {¶ 79} Appellants claim the trial court erred in refusing to allow as exhibits a drawing and tumor models prepared by Scott Weiner, M.D., one of appellant's treating physicians. We disagree.
 {¶ 80} As stated above, rulings on evidence rest in the trial court's sound discretion. Sage; Blakemore.
 {¶ 81} During his discovery deposition, Dr. Weiner was asked to "draw what the representative tumor looked like in cross section." Plaintiffs' Exhibit 12. The drawing consisted of marks placed upon a "representation" of appellant's "thigh with a cut through the middle of it." Vol. 4 T. at 218. Dr. Weiner explained what the drawing was as follows (Id. at 219):
 {¶ 82} "Q. All right. And this is your drawing. Is this your drawing of what it looked like when you saw the MRI's?
 {¶ 83} "A. Yes.
 {¶ 84} "Q. All right. Now, I'm going to have you stand right there and we're going to look at another drawing.
 {¶ 85} "A. And I did this without the MRI in front of me so —
 {¶ 86} "Q. All right.
 {¶ 87} "A. — it wasn't anatomically correct.
 {¶ 88} "Q. It was, it was a —
 {¶ 89} "A. Representation of, of the MRI.
 {¶ 90} "Q. Okay. An aid to help us understand —
 {¶ 91} "A. Yeah.
 {¶ 92} "Q. — the location of the tumor in relation to the bone?
 {¶ 93} "A. That's correct."
 {¶ 94} The trial court denied the admission of the drawing, classifying it as illustrative evidence just as if the witness had drawn it live at trial. Vol. 10 T. at 110-111. Prior to the testimony involving the drawing, Dr. Weiner had explained the size of the tumor from what he had seen on the MRI. Vol. 4 T. at 205-207. The MRI report, Plaintiffs' Exhibit 10, was admitted into evidence. Vol. 10 T. at 109. Michael Joyce, M.D., appellants' expert witness, described the size of the tumor and explained it was wrapped around the whole bone. Vol. 6 T. at 217, 219-222.
 {¶ 95} Upon review, we find the trial court did not abuse its discretion in refusing to admit the drawing.
 {¶ 96} Appellant also claims the trial court erred in denying admission of tumor models and a model femur (Plaintiffs' Exhibits 36-39 and 41). Dr. Joyce testified Plaintiffs' Exhibit 36 was actually undersized. Id. at 219-220. Plaintiffs' Exhibit 37 was a reasonable depiction of the size of the tumor on January 5, 1999. Id. at 226-227. Plaintiffs' Exhibit 38 fairly represented the size of the tumor on November 23, 1998. Id. at 230-231. Plaintiffs' Exhibit 39 fairly and accurately represented the size of the tumor on September 24, 1998. Id. at 336-337. Plaintiffs' Exhibit 41 was a model of a femur. Id. at 220-221. Dr. Joyce verbally described the size of the tumor as it progressed and how it wrapped around the bone. Id. at 219-220, 221, 228, 231. Clearly the models were used to visualize to the jury the sizes already described.
 {¶ 97} Upon review, we find no error in permitting the tumor models to be used during testimony and closing argument. The models were illustrative evidence. The trial court did not abuse its discretion in refusing to admit them into evidence.
 {¶ 98} Assignment of Error IV is denied.
 {¶ 99} The cross-assignments of error are moot.
 {¶ 100} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, J., Hoffman, P.J. and Wise, J. concur.
Topic: Med mal; evidence issues; jury instruction.
[1] Appellee StatCare is owned, operated and staffed by appellee Mercy Medical Center.
[2] The Ninth New Collegiate Dictionary (1991) 249, defines "clinical" as "1: of, relating to, or conducted in or as if in a clinic: as a: involving direct observation of the patient b: diagnosable by or based on clinical observation 2: analytical, detached, or coolly dispassionate."